### W. M. Mills v. The City of Osawatomie.
#### No. 10687.

1. Contract for Lighting City—*not reserving right of rescission, cannot be terminated by repealing franchise ordinance, nor, where severable, for temporary non-performance for which party not to blame.*  A city granted a franchise and entered into a contract with a party "to construct, reconstruct, maintain, repair, and operate" an electric-light plant for furnishing light to the city for a period of eight years at a stipulated rate; the city to make monthly payments for the light furnished. The right to rescind the contract for non-performance was not reserved to the city in the contract itself.  The plant was built and operated for a long time under the contract, and then, without

the fault of the owner, it was partially destroyed by fire. The owner determined to rebuild the plant, and without unjustifiable delay proceeded to do so; and the city, although well aware of this fact, gave no notice of a purpose to terminate the contract, until the plant was practically rebuilt. *Held*, that the contract was severable in its nature; and that under the circumstances the city could not terminate the contract in that way, nor by the mere repeal of the ordinance granting the franchise.

2. RIGHTS TO RESCIND CONTRACT—*must be exercised within reasonable time.* If a party has a right to rescind a contract, he must exercise the right within a reasonable time, and not wait until a rescission will work a great injury to the opposite party.

3. ———— *unreasonable delay waives.* Unreasonable delay on the part of him to whom the right to rescind belongs is generally deemed to be a waiver thereof.

Error from the Court of Appeals, Southern Department. Opinion filed June 11, 1898.  *Reversed.*

*Gleed, Ware & Gleed, J. S. R. Worley* and *Wells, Crossan & McLean,* for plaintiff in error.

*H. S. Maynard* and *B. F. Simpson,* for defendant in error.

JOHNSTON, J.   This was an action by W. M. Mills against the city of Osawatomie to recover on a contract for the lighting of that city.   The contract was made, on March 14, 1892, between C. M. Race and the City, by which Race was to erect and maintain an electric-light plant of a certain kind and furnish to the City, for eight years, fifteen arc lights at a stipulated rate ; the payments to be made monthly.   In pursuance of the contract, the City enacted an ordinance confirming the contract and granting Race a franchise for eight years ; authorizing him "to construct, reconstruct, maintain, repair, and operate" an electric-light plant suitable for the production of electricity for lighting the streets, halls, churches, hotels, and private houses, and all other places where light might be used in said city.   To accom-

plish this purpose, the use of the streets, alleys, and public grounds was granted to Race for a period of eight years, and the maximum rates to be charged for light furnished private parties were prescribed. It was provided that work upon the plant should be commenced within thirty days and that it should be complete and in operation within ninety days. The plant was constructed and in operation within the time provided for in the ordinance and contract, and was in operation by Race, and his successors and assigns, until February 8, 1893, when the plaintiff purchased and obtained a transfer of the same. After he became the owner thereof he continued to operate it the same as before ; and at the request of the City provided and furnished two more arc streetlights, making seventeen in all, and all these lights so furnished were paid for by the City until December 11, 1894. On that day, without any fault or negligence on the part of the plaintiff or his employees, the power-house of the electric-light plant and all the machinery therein, were totally destroyed by fire, except that some of the principal parts of the machinery was afterward found to be suitable for repairs. After the fire, and until April 11, 1895, the plaintiff was in correspondence with manufacturers of electric-light plants to learn whether or not he would and could rebuild, and to ascertain whether the injured machinery could be repaired, and used in rebuilding. In February, 1895, he determined to rebuild the plant ; and in April shipped his damaged machinery to Kansas City, Missouri, for inspection, and in order that he might determine whether it could be used again or whether it would be necessary to purchase new machinery. In that month, and after he had shipped the machinery to Kansas City, a committee of the city council called on him to inquire whether or not

it was his intention to rebuild the plant; and he informed them ·that he did intend to rebuild, and that he was already making preparations therefor. This information the committee reported to the city council. He proceeded with the rebuilding of the plant,· and by August 1, 1895, it was so far completed as to be ready to be tested, and on August 9, 1895, it was found to be fully completed and ready for use. On June 13, 1895, the mayor and council passed an ordinance purporting to repeal the ordinance granting the franchise, and on August 2, 1895, they caused to be served on the plaintiff a notice of the attempted repeal of the ordinance, and further that the City considered the contract to be canceled. From the time of the inquiry and report by the committee of the city council, in April, 1895, until the completion and rebuilding of the plant, in August, 1895, the City and its officers had full knowledge of the fact that the plaintiff was rebuilding the plant and preparing to furnish light to the City under the contract; but no notice was given of an attempt to cancel the contract or of a refusal to pay for the lights, until August 2, 1895. Since the rebuilding of the plant the plaintiff has furnished the City seventeen arc street lights, as provided in the contract and ordinance, continuously, without interruption, since August 9, 1895, and has presented bills therefor to the city council from month to month, in accordance with the contract; but these have been rejected by the council, and the City has never paid anything thereon.

The District Court held that the legal rights of the plaintiff under the contract and ordinance were not forfeited or relinquished by the destruction of the building and machinery, nor by the delay in rebuilding and putting the same in operation; and further held that the action of the City in attempting to re-

peal the franchise ordinance and the giving of the notice of August 2, 1895, did not cancel the contract or affect the plaintiff's legal rights. Judgment was accordingly given for the plaintiff, and the case was taken on error to the Court of Appeals where that judgment was reversed. 45 Pac. 937.

There are two good reasons why the judgment of the trial court must be upheld. The contract could not be terminated or set aside at the will of the City. It was partly performed, and required continuous acts and services, from day to day for a period of eight years, for which monthly payments were to be made. The contract was severable in its nature and objects; and while a partial default might give a right to damages, it did not necessarily entitle the City to a rescission of the whole contract. On the faith of the contract a large expenditure was made for complicated machinery, which was liable to be injured or broken by use. That there might be interruptions of the plant and that repairs might become necessary, was evidently within the contemplation of the parties, as the ordinance provides for the repair and reconstruction of the appliances and machinery. All know that there are frequent interruptions in the running of such machinery, and it will hardly be contended that an interruption of a day or two would work a forfeiture of the franchise and of the rights of the plaintiff under the contract. If there was an unreasonable delay in rebuilding the plant, or an unjustifiable failure to perform, a rescission of the contract might be had, but, upon the testimony, the court has in effect found that the plaintiff's delay in rebuilding was reasonable, and that the right to rescind was not exercised by the defendant within a reasonable time. The disabling of the plant, as we have seen,

1. Contract not terminated by repealing franchise, when.

was not due to the fault or negligence of the plaintiff. The City, instead of complaining of delay or giving notice of a purpose to cancel the contract, sent an official committee, who learned from the plaintiff that he had already begun to rebuild and repair the plant in order that he might comply with the terms of the contract. This official information was communicated to the city council, and yet no notice of a purpose to cancel the contract was given until the plant had been rebuilt. It is true that an ordinance was passed which attempted to repeal the franchise ordinance, but the City could not relieve itself from the obligations of the contract in this way. The right to terminate the contract in this way was not reserved to the City in the contract. This question was before the court in *City of Winfield v. Water Company* (51 Kan. 70, 32 Pac. 663), where it was said : " We do not think a repeal of the ordinance could have the effect to terminate the contract, because it is seldom possible for one party by its own action to relieve itself from liability under a contract mutually entered into, where no right to do so is reserved in the contract itself." Under the circumstances, the City was not entitled to renounce the entire contract, but had a right to any damages sustained by reason of non-performance.

Again, if the delay of the plaintiff was unreasonable and his failure to perform unjustifiable, so that the City had a right to rescind, it was essential to the exercise of that right that it should have taken prompt and reasonable action on the discovery of the breach. The city authorities inquired, and learned that it was the plaintiff's purpose to rebuild the plant and to carry out the contract. They allowed him to proceed with the reconstruction of the plant without objection or any intimation that advantage would be taken of the

2. Rescission must be made in reasonable time.

temporary default.   Instead of claiming a right to rescind, they remained quiet, and permitted him to expend a large amount of money with the view of carrying out the contract.   The rebuilding of the plant, as they well knew, was upon the basis of a subsisting contract, and their conduct would necessarily indicate to the plaintiff that they regarded and treated the contract as a subsisting one.   The plant was of little value or use except to furnish light to the City, and the plaintiff would necessarily lose largely if the City were permitted to sit quiet while the reconstruction was in progress and then repudiate the contract after the expenditure was made.   If a party has a right to rescind such a contract, he must exercise the right within a reasonable time, and not wait until a rescission will work a great injury to the opposite party.   If he deals with the other party, and permits large expenditures to be made, on the theory that there is a subsisting contract, he waives the right of rescission. Unreasonable delay on the part of him to whom the right to rescind belongs is generally deemed to be a waiver thereof.

3. Unreasonable delay waives contract.

The judgment of the Court of Appeals will be reversed, and the judgment of the District Court affirmed.